STATE OF NORTH CAROLINA v. JOEL MARK DURHAM, DEFENDANT

No. COA05-286

(Filed 20 December 2005)

1. **Constitutional Law— right to remain silent—refusal to talk to police—evidence of sanity**

   The trial court erred in a first-degree murder case by allowing the State to argue that the jury could use defendant's silence while in custody as evidence of his sanity, and defendant is entitled to a new trial, because: (1) the prosecutor's statements referred repeatedly to defendant's silence, not merely his behavior, and urged the jury to infer that defendant was sane enough to know that remaining silent was in his best interest; and (2) the error was not harmless beyond a reasonable doubt when the only real issue at trial was whether defendant was legally insane at the time of the murder since defendant admitted firing the shots that killed the victim.

2. **Evidence— testimony—pretrial sanity hearing—impeachment—blanket prohibition**

   The trial court erred in a first-degree murder case by allowing the State to cross-examine experts using testimony from defendant's pretrial sanity hearing even though the State asserts that N.C.G.S. § 15A-959 does not bar the use of pretrial testimony for the purpose of impeaching the experts with prior inconsistent statements, because: (1) the statutory language does not limit the bar on using testimony or evidence to substantive evidence, but instead states a blanket prohibition; and (2) it cannot be said that the improper admission of an expert's statements from the pretrial hearing was harmless when the only issue at trial was defendant's sanity at the time of the murder, and substantial

STATE v. DURHAM

[175 N.C. App. 202 (2005)]

evidence including the testimony of all three expert witnesses showed that defendant was insane.

### 3. Evidence— exclusion of testimony—sanity

The trial court did not abuse its discretion in a first-degree murder case by excluding evidence allegedly supporting the expert testimony that defendant was insane at the time of the crime, because: (1) although the trial court refused to allow an expert to testify that in ten prior cases she had never found a defendant insane at the time of the crime, it cannot be said that the court's determination was manifestly unsupported by reason; and (2) although the trial court excluded testimony from defendant's brother about the brother's own mental illness which was similar to defendant's, two experts had previously testified that mental illnesses tended to run in families and one expert specifically testified that mental illness ran in defendant's family.

Appeal by defendant from judgment entered 16 March 2004 by Judge Steve A. Balog in Guilford County Superior Court. Heard in the Court of Appeals 19 October 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General A. Danielle Marquis, for the State.*

*Glover & Peterson, P.A., by Ann B. Peterson, for defendant-appellant.*

HUDSON, Judge.

On 3 September 2002, the grand jury indicted defendant Joel Mark Durham the first-degree murder of Ralph Gaiser. After defendant gave notice of his intent to rely on an insanity defense, the court held a pretrial hearing. Following the hearing, Judge Melzer A. Morgan denied defendant's motion to have the charge of first-degree murder dismissed pretrial on the basis of a defense of insanity. The case came on for trial at the 8 March 2004 criminal session. On 16 March 2004, the jury found defendant guilty of first-degree murder. The court sentenced defendant to life in prison and defendant appeals. As described below, we conclude that defendant is entitled to a new trial.

Defendant admitted that he shot his friend Ralph Daniel Gaiser to death on Gaiser's birthday, 3 July 2002. Defendant had known Gaiser for twenty-five years, though their relationship had deteriorated in recent years. As Gaiser and his friend Don Whitaker sat in Gaiser's

STATE v. DURHAM

[175 N.C. App. 202 (2005)]

living room, defendant entered the house and spoke with them briefly. Defendant then stated that he had left his car lights on and left. He returned a few minutes later and shot Gaiser four times in the head and chest with a rifle. Whitaker asked defendant not to shoot him and said he wanted to leave. Defendant responded, "This doesn't concern you. It is a CIA hit." Defendant then left the house.

The evidence tended to show that defendant believed that the CIA had removed his eyes and replaced them with cameras. He also believed that the CIA was controlling him and was behind a variety of plots, including the 11 September 2001 attacks. Concerned about defendant's behavior and thoughts, his family took him to the Guilford County Mental Health Center in January 2000, where he was diagnosed as psychotic with paranoid delusional disorder. Defendant began taking anti-psychotic medication which improved his symptoms. After his arrest, three mental health experts, including Dr. Karla de Beck, who had been retained by the State, examined defendant and found that he was legally insane at the time of the crime. The State offered several lay witnesses who testified that they believed defendant was sane at the time of the crime. The jury convicted defendant of first-degree murder.

[1] Defendant first argues that the court erred in allowing the State to argue that the jury could use his silence while in custody as evidence of defendant's sanity, in violation of his constitutional rights. We agree.

During his closing statement to the jury, the prosecutor argued the following, quoting Dr. de Beck:

> Okay he's been arrested now. The burden has been lifted. He's no longer uncertain, if you believe him, what's going to happen. "Detective Spagnola presented him with a waiver of rights and explained his rights to him. Mr. Durham had no questions and would not look up. He would not speak."

Over defendant's objection, the court allowed the State to continue this argument, again quoting Dr. de Beck:

> He said he attempted to talk to him for thirty minutes without any murmur from [defendant]. It was noted that the only personal acknowledgement of my presence I received from Mr. Durham from our interview was in showing him a picture of Danny Gaiser, the victim. He briefly looked up at the photograph, nodded his

head, said "yes," and looked back at his shoes, where his eyes continued to stare for the rest of the interview.

If the burden has been lifted and he's relieved, why does he not tell the police what happened? Why does he wait until he talks to his experts when he knows they're interviewing him to determine whether he's insane or not? Why didn't he tell the police then, if we are going to talk about the truth? I guess the same reason why we don't know where the gun was on the day of the murder.

The fact is the defendant knew the difference between right and wrong.

Defendant contends that this argument from the State implies that defendant must have been sane and known right from wrong based on his refusal to talk to the police once he was in custody.

In our legal system, it is axiomatic that a criminal defendant is entitled under the Fifth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, to remain silent and to refuse to testify. *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106 (1965). This right is also guaranteed under Article I, Section 23 of the North Carolina Constitution. *State v. Reid*, 334 N.C. 551, 554, 434 S.E.2d 193, 196 (1993). It is equally well settled that when a defendant exercises his right to silence, it 'shall not create any presumption against him,' N.C.G.S. § 8-54 (1999), and any comment by counsel on a defendant's failure to testify is improper and is violative of his Fifth Amendment right, [*State v.*] *Mitchell*, 353 N.C. [309,] 326, 543 S.E.2d [830,] 840 [2001].

*State v. Ward*, 354 N.C. 231, 250-51, 555 S.E.2d 251, 264 (2001), *cert. denied*, 359 N.C. 197, 605 S.E.2d 472 (2004). The State contends that the prosecutor's remarks were merely a permissible comment on defendant's behavior and demeanor during the interview. We find this argument unpersuasive. The prosecutor's statements referred repeatedly to defendant's silence, not merely to his behavior, and clearly urged the jury to infer that defendant was sane enough to know that remaining silent was in his best interest. As the Supreme Court made clear in *Ward*, this the State may not do.

Every comment "implicating a defendant's right to remain silent, although erroneous, is not invariably prejudicial." *Id.* at 251, 555 S.E.2d at 265; *see also State v. Shores*, 155 N.C. App. 342, 351, 573 S.E.2d 237, 242 (2002), *disc. review denied*, 356 N.C. 690, 578 S.E.2d

592 (2003). "Indeed, such error will not earn the defendant a new trial if, after examining the entire record, this Court determines that the error was harmless beyond a reasonable doubt." *Ward*, at 251, 555 S.E.2d at 265

In *Ward*, a capital murder case, the challenged argument came at the close of the sentencing phase, when the prosecutor argued the following:

> [Defendant] started out that he was with his wife and child or wife and children or something that morning. We know he could talk, but he decided just to sit quietly. He didn't want to say anything that would 'incriminate himself.' So he appreciated the criminality of his conduct all right.

> He was mighty careful with who [sic] he would discuss that criminality, wasn't he? He wouldn't discuss it with the people at [Dorothea] Dix [Hospital].

*Id.* at 266, 555 S.E.2d at 273. Defendant Ward did not object. The Supreme Court held that the argument invited such a clear violation of defendant's right to silence that it required the trial court to intervene *ex mero motu*. *Id.* Since the trial court had not done so, the Supreme Court ordered a new sentencing hearing, noting that it "cannot conclude that this omission had no impact on the jury's sentencing recommendation." *Id.* Here, the defendant admitted firing the shots that killed Gaiser, so the only real issue at trial was whether defendant was legally insane at the time of the murder. Three mental health experts testified that they believed defendant was legally insane. Lay witnesses and circumstances presented the only evidence of defendant's sanity. We are unable to distinguish *Ward* in a meaningful way. Given this evidence, we are unable to say that this error was harmless beyond a reasonable doubt. Defendant is entitled to a new trial.

Although we award defendant a new trial on the grounds above, we address his remaining arguments as they could arise in a new trial.

[2] Defendant argues that the court erred in allowing the State to cross-examine experts using testimony from his pretrial sanity hearing. We agree.

N.C. Gen. Stat. § 15A-959 provides for pretrial sanity hearings and states that:

(c) Upon motion of the defendant and with the consent of the State the court may conduct a hearing prior to the trial with regard to the defense of insanity at the time of the offense. If the court determines that the defendant has a valid defense of insanity with regard to any criminal charge, it may dismiss that charge, with prejudice, upon making a finding to that effect. The court's denial of relief under this subsection is without prejudice to the defendant's right to rely on the defense at trial. If the motion is denied, no reference to the hearing may be made at the trial, and recorded testimony or evidence taken at the hearing is not admissible as evidence at the trial.

N.C. Gen. Stat. § 15A-959(c) (2003) (emphasis supplied). The State asserts that the statute does not bar the use of pretrial testimony for the purpose of impeaching the experts with prior inconsistent statements. Prior inconsistent statements are not admissible as substantive evidence, but may be used for impeachment purposes. *State v. Hunt*, 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989). However, the statutory language quoted above does not limit the bar on using hearing testimony or evidence to "substantive evidence," but rather states a blanket prohibition. *Cf. State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998) (where the Court found no error in allowing the prosecutor to cross-examine defendant's expert using testimony from prior competency hearing (as opposed to an insanity hearing)). The court erred in allowing evidence taken at the pretrial insanity hearing to be admitted as impeachment evidence at defendant's trial. "The admission of technically incompetent evidence is harmless unless it is made to appear that defendants were prejudiced thereby and that a different result likely would have ensued had the evidence been excluded." *State v. Logner*, 297 N.C. 539, 549, 256 S.E.2d 166, 172 (1979). Because the only issue at trial was defendant's sanity at the time of the murder, and because substantial evidence including the testimony of all three expert witnesses tended to show that defendant was insane, we cannot say that the improper admission of Dr. de Beck's statements from the pretrial hearing was harmless.

**[3]** Defendant also argues that the court erred in excluding evidence supporting the expert testimony that defendant was insane at the time of the crime. We do not agree.

"[A] trial court's decision to admit evidence under Rule 403 will not be grounds for relief on appeal unless it is 'manifestly unsupported by reason or is so arbitrary it could not have been the result of

a reasoned decision.' " *State v. Love*, 152, N.C. App. 608, 614-15, 568 S.E.2d 320, 325 (2002), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 66 (2003), (quoting *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993)). Here, the court refused to allow Dr. de Beck to testify that in ten prior cases she had never found a defendant insane at the time of his crime. Although the court might properly have admitted such evidence, we cannot say that the court's determination to exclude such testimony was manifestly unsupported by reason.

The court also excluded testimony from defendant's brother about the brother's own mental illness, which was similar to defendant's. Two experts had previously testified that mental illnesses tended to run in families and Dr. de Beck specifically testified that mental illness ran in defendant's family. Defendant maintained that the brother's testimony was more compelling evidence that this type of mental illness in fact ran in defendant's family, and bolstered defendant's claim of insanity. We see no abuse of discretion and thus we overrule this assignment of error.

New trial.

Judges BRYANT and CALABRIA concur.