STATE OF NORTH CAROLINA v. NATHAN LARELL BATCHELOR

No. COA07-863

(Filed 6 May 2008)

1. **Criminal Law— failure to rule on motion to dismiss— prejudice**

    There was prejudice in a prosecution for armed robbery from the trial court's failure to rule on defendant's motion to dismiss at the close of the State's evidence, which was based on the argument that the evidence of defendant being the perpetrator was insufficient. Statements of witnesses about defendant's participation in the robbery that were admitted only for impeachment purposes were never admitted as substantive evidence.

2. **Criminal Law— failure of trial court to rule on motion to dismiss—burden of proof not carried—prosecution dismissed**

    A conviction for armed robbery was reversed and the charge dismissed where the trial court did not rule on defendant's motion to dismiss based on insufficient evidence of defendant being the perpetrator. The normal remedy would be a remand for a new trial, but in this case the State did not carry its burden.

3. **Appeal and Error— Rule 2—failure to rule on motion to dismiss criminal action—burden of proof not carried— manifest injustice**

    As an alternative basis for overturning an armed robbery conviction, Appellate Rule 2 was invoked to address the sufficiency

of the evidence despite defendant's failure to renew his motion to dismiss at the close of all the evidence. The State failed to meet its burden of proving that defendant was the perpetrator; if the matter is not reviewed, defendant will remain imprisoned for a crime that the State did not prove beyond a reasonable doubt.

Appeal by Defendant from judgment dated 9 January 2007 by Judge William C. Griffin, Jr. in Superior Court, Nash County. Heard in the Court of Appeals 19 February 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Amanda P. Little, for the State.*

*Brian Michael Aus for Defendant-Appellant.*

McGEE, Judge.

Nathan Larell Batchelor (Defendant) appeals from his conviction of robbery with a dangerous weapon. At trial, the State called as a witness one of Defendant's co-defendants, Dion Sykes (Mr. Sykes), who testified that previously he had pleaded guilty to conspiring with Defendant to commit robbery with a dangerous weapon of Griffin's Food Store in Red Oak on 26 July 2005. However, Mr. Sykes then testified that Defendant had not been involved with the robbery of Griffin's Food Store. He also testified that he had not told anyone that Defendant had been involved in the robbery.

The State also called Sondra Harris (Ms. Harris), who testified that she had pleaded guilty to conspiracy to commit robbery with a dangerous weapon arising out of the robbery of Griffin's Food Store. Ms. Harris also testified as follows:

Q. Prior to [26 July 2005] did you have a conversation with Dion Sykes?

A. Yes.

Q. What was that conversation about?

[DEFENSE COUNSEL]: Objection, Your Honor. That's hearsay.

THE COURT: Sustained.

The trial court then dismissed the jury and conducted the following inquiry into the admissibility of Ms. Harris's testimony:

[THE STATE]: The reason we are soliciting this testimony is to simply show that . . . [Mr.] Sykes, on a prior occasion, did make a

statement inconsistent with what he just testified to on the stand. He testified that he had never made a statement that he and [Defendant] robbed the store. This witness is her[e] to testify that [Mr. Sykes], in fact, did make that statement to her. Her entire statement goes to the inconsistencies . . . .

THE COURT: [Defense Counsel], I believe, if he told, if . . . Defendant told this witness that he did commit the crime,—let me hear exactly what you want.

[THE STATE]: Yes, sir. I can ask her to read her statement.

[DEFENSE COUNSEL]: Yes, I have seen it.

THE COURT: Let me read about it. (Court reads document.) I am going to overrule your objection.

Following this colloquy, Ms. Harris testified in the presence of the jury that she helped Mr. Sykes plan the robbery. Ms. Harris also testified that after the robbery, Mr. Sykes told her ex-boyfriend that Mr. Sykes and Defendant had robbed Griffin's Food Store. Ms. Harris then read a 23 August 2005 statement that she had given to police, in which she stated that on the night after the robbery, Mr. Sykes told her and her ex-boyfriend that

[Mr. Sykes] and [Defendant] had robbed the store. [Mr. Sykes] told us that [Defendant] tied one of the ladies up in the store and [Mr. Sykes] was with the other lady trying to get her to open the safe. [Mr. Sykes] said that she would not open the safe, so [Mr. Sykes] shot into the floor. [Mr. Sykes] also said that he only got about $100.00 and they both split it in half, between the two of them.

The State also presented the testimony of Sara Williams (Ms. Williams), who testified without objection that "[Mr. Sykes] told [her] that [Mr. Sykes] and [Defendant] were the ones that broke[] into [Griffin's Food Store]." Ms. Williams also testified over objection that Ms. Harris told her that Mr. Sykes and Defendant committed the robbery.

At the close of the State's evidence, the following colloquy occurred:

THE COURT: Any evidence for . . . Defendant?

[DEFENSE COUNSEL]: I'd like to make a motion at this time.

THE COURT: I'll put a ruling in [the] record to that later. Do you have any witnesses?

[DEFENSE COUNSEL]: Yes, You[r] Honor.

THE COURT: All right, you may proceed.

Defendant presented evidence, and at the close of all the evidence, Defendant did not make a motion to dismiss. The trial court then instructed the jury on the relevant law. As part of its instructions, the trial court instructed the jury as follows:

> Now members of the jury, when evidence has been received tending to show that [at] an earlier time a witness made a statement which may be consistent, or may conflict with his testimony at this trial, you must not consider such earlier statements as evidence of truth of what was said at that earlier time, because that statement was not made here under oath. If you believe that such earlier statement was made, and that it is consistent or conflicts with the testimony of the witness at this trial, then you may consider this, together with all other facts, and circumstances bearing upon the witness's truthfulness, in deciding whether you will believe, or disbelieve, that witness's testimony at this trial.

Following the jury charge, but before the sheriff delivered the verdict sheet to the jury room, the trial court stated the following outside the presence of the jury: "Let the record show that at the close of the State's evidence, . . . [D]efendant moved to dismiss the case. The [trial court] denied the motion at that time."

The jury found Defendant guilty of robbery with a dangerous weapon. The trial court entered judgment on this conviction and sentenced Defendant to a term of 103 months to 133 months in prison. Defendant appeals.

---

[1] Defendant argues that pursuant to N.C. Gen. Stat. § 15A-1227(c), the trial court erred by failing to rule on his motion to dismiss at the close of the State's evidence. N.C. Gen. Stat. § 15A-1227(c) (2007) provides that a "judge must rule on a motion to dismiss for insufficiency of the evidence before the trial may proceed." The State counters that "[D]efendant waived any right to appeal the trial court's handling of this motion due to his lack of objection to the [trial] court's procedure[.]" However, as our Supreme Court has stated, "when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the [trial] court's action is pre-

served, notwithstanding [the] defendant's failure to object at trial." *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

In the present case, the record demonstrates that Defendant made a motion to dismiss at the close of the State's evidence. However, the trial court did not rule on Defendant's motion to dismiss at that time and continued the trial, and we must now determine whether this failure prejudiced Defendant. Pursuant to N.C. Gen. Stat. § 15A-1443(a) (2007),

[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

Defendant argues he was prejudiced by this failure because there was no substantial evidence identifying Defendant as the perpetrator of the offense. Defendant argues that absent the hearsay testimony of Ms. Harris and Ms. Williams, "there was not one reasonable inference that could be made, much less any substantial evidence presented, which went to proving that [Defendant] was involved in the robbery." We agree.

N.C. Gen. Stat. § 8C-1, Rule 607 (2007) provides that "[t]he credibility of a witness may be attacked by any party, including the party calling [the witness]." Our Supreme Court has recognized that "where the party calling a witness is genuinely surprised by the witness' change of his or her version of facts, impeachment by prior inconsistent statements is proper." *State v. Miller*, 330 N.C. 56, 62-63, 408 S.E.2d 846, 850 (1991). However, while prior inconsistent statements are admissible for impeachment purposes, they are not admissible as substantive evidence. *State v. Durham*, 175 N.C. App. 202, 207, 623 S.E.2d 63, 67 (2005).

The State argues that the testimony of Ms. Harris and Ms. Williams was admitted solely for the purpose of impeaching Mr. Sykes's earlier testimony. In support of this argument, the State points out that the trial court instructed the jury that it could consider prior inconsistent statements only for impeachment purposes. We agree with the State. However, because the prior inconsistent statements were admitted solely to impeach Mr. Sykes's testimony that Defendant was not involved in the robbery, Mr. Sykes's prior inconsistent statements were not admitted as substantive evidence. *See*

*id.* (recognizing that while prior inconsistent statements are admissible for impeachment purposes, they are not admissible as substantive evidence). Consequently, the State did not offer any substantive evidence that Defendant was the perpetrator of the robbery.

The State cites *State v. Featherson*, 145 N.C. App. 134, 548 S.E.2d 828 (2001), and argues that Mr. Sykes's prior inconsistent statements implicating Defendant in the crime constituted sufficient evidence that Defendant was the perpetrator. In *Featherson*, the defendant's co-defendants had made statements to police following their arrest, implicating the defendant in the crimes. *Id.* at 137, 548 S.E.2d at 830. However, their testimony at trial "exonerated [the] defendant from any participation in the crimes charged." *Id.* Our Court recognized that the pre-trial statements of the defendant's co-defendants were admissible to impeach their trial testimony. *Id.* However, our Court also held that "statements made by [the defendant's] codefendants were also properly admitted as substantive evidence." *Id.* at 137, 548 S.E.2d at 831. Specifically, one of the co-defendants testified on direct, without objection, as to what he had told police regarding the defendant's involvement. *Id.* Moreover, after the defendant objected to the admission of that co-defendant's written statement, "[t]he State then asked [the co-defendant] what he told the Detective, and no timely objection was made." *Id.* Therefore, the defendant waived his challenge to the admission of the written statement. *Id.* Our Court also emphasized that the challenged evidence "was admitted without any limitation." *Id.* at 138, 548 S.E.2d at 831. Furthermore, the defendant elicited the pre-trial statement of the other co-defendant on cross-examination of an investigator, and therefore waived his objection to that testimony. *Id.* As to the sufficiency of the evidence, our Court in *Featherson* held:

> [T]he trial court properly denied [the] defendant's motion to dismiss as to those charges. The alleged hearsay evidence was either properly admitted, or admitted without objection. This evidence includes statements by codefendants which implicate [the] defendant in the crimes. This evidence, standing alone, constitutes sufficient evidence to deny [the] defendant's motion to dismiss.

*Id.* at 139, 548 S.E.2d at 831-32.

In the present case, unlike in *Featherson*, the testimony of Ms. Harris and Ms. Williams that Mr. Sykes told them Defendant had participated in the robbery was never admitted as substantive evidence.

Mr. Sykes, unlike the co-defendant in *Featherson*, never testified that he told anyone that Defendant had been involved in the robbery. Moreover, in the present case, unlike in *Featherson*, the trial court instructed the jury that it could consider the prior inconsistent statements only for impeachment purposes and not as substantive evidence. This jury instruction made it clear that Mr. Sykes's prior inconsistent statements were admitted solely as impeachment testimony and not as substantive evidence.

The State also contends that Defendant lost the benefit of his objection to Ms. Harris's testimony by failing to object again when Ms. Harris read her statement. However, it appears, based upon the colloquy following Defendant's objection, recited above, that Defendant's objection covered the entire line of questioning, including the reading of the statement. The State also asserts that Defendant elicited Mr. Sykes's prior statements on cross-examination of Ms. Harris and Ms. Williams and waived any challenge to that evidence. However, as our Supreme Court has recognized, "[n]ormally, the objecting party does not waive an objection to evidence the party contends is inadmissible by trying to explain it, impeach it, or destroy its value on cross-examination." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995).

In the present case, it is clear that Defendant elicited this information on cross-examination in order to explain it, impeach it and destroy its value. On cross-examination, Ms. Harris testified as follows:

Q. Ms. Harris[], you don't know for a fact that [Defendant] participated in that robbery, do you?

A. No.

Q. The only thing that you know is that you heard something from Dion Sykes?

A. Yes, sir.

Q. Now, Dion[] didn't tell you that he put [Defendant's] name into it, because he was mad at [Defendant] for trying to make time with his girl, did he?

A. No. I don't know about that.

Q. He didn't tell you that part, did he?

A. No.

Q. That [Defendant] didn't participate at all really. [Mr. Sykes] was just mad at [Defendant].

A. He didn't tell that.

It does not appear that Defendant elicited any prior statements on his cross-examination of Ms. Williams.

The State also argues that Defendant's own witness, Sequam Hussy, testified that Mr. Sykes told him that Mr. Sykes and Defendant had committed the crime. However, Sequam Hussy did not testify to that effect. Rather, he testified as follows:

Q. What, if anything, did Mr. Sykes tell you?

. . .

A. He told me that [Defendant] didn't have anything to do with it. And that he wanted to get back at [Defendant] because of [Defendant] having sex with [Mr. Sykes's] baby's momma.

Moreover, even if Defendant failed to object every time a witness testified as to Mr. Sykes's prior inconsistent statements, any such statements were not admitted as substantive evidence. Most importantly, the State's proffered purpose for the evidence, both at trial and on appeal, and the trial court's instruction to the jury, demonstrate that evidence of Mr. Sykes's prior inconsistent statements served only to impeach Mr. Sykes's trial testimony. This testimony did not constitute substantive evidence that Defendant was involved in the robbery. Accordingly, we hold that the State failed to present substantial evidence that Defendant was the perpetrator.

The State also asserts that other evidence presented was sufficient to identify Defendant as the perpetrator. We disagree. The State asserts that the following evidence was sufficient to identify Defendant as the perpetrator: (1) Mr. Sykes called Defendant's house from jail and asked an unknown person whether police found anything when they searched Mr. Sykes's house; (2) a gun was found at Defendant's house which the State asserts could have been used by Defendant when holding one of the victims during the robbery; and (3) testimony that Defendant wore earrings like the masked gunman shown holding one of the victims in the photographs admitted at trial. However, this evidence did not identify Defendant as the perpetrator. Regarding Mr. Sykes's call to Defendant's house, the State, in its brief, asks rhetorically, "If . . . [D]efendant was not involved, why would Mr.

Sykes even call his house[?]" However, this evidence does not tend to identify Defendant as the perpetrator. As to the 22-caliber handgun found in Defendant's house, police determined that it was not the weapon fired during the robbery. While one of the victims testified that she "felt what [she] thought was a gun stuck in [her] side," she did not see whether the person who held her had a gun. Finally, the State did not proffer any clear evidence that Defendant wore earrings. Moreover, even if Defendant wore earrings, as did one of the participants in the robbery, this fact was insufficient to identify Defendant as the perpetrator. Both of the participants in the robbery were masked at the time, and neither of the victims identified Defendant as a participant in the crime.

[2] For the reasons stated above, we hold that Defendant was prejudiced by the failure of the trial court to rule on his motion to dismiss at the close of the State's evidence because there was insufficient evidence that Defendant was the perpetrator. We note that the normal remedy would be to vacate the conviction and remand the case for a new trial. However, because the State failed to meet its burden at Defendant's trial, we must reverse Defendant's conviction and dismiss the charge. *See State v. Mueller*, 184 N.C. App. 553, 561, 647 S.E.2d 440, 447, *cert. denied*, 362 N.C. 91, 657 S.E.2d 24 (2007) (reversing the defendant's conviction of taking indecent liberties with a minor and dismissing the charge because the State presented insufficient evidence of that offense).

[3] In the alternative to his argument under N.C.G.S. § 15A-1227(c), Defendant requests that we invoke N.C.R. App. P. 2 to prevent manifest injustice. Again, Defendant argues that absent the hearsay testimony of Ms. Harris and Ms. Williams, "there was not one reasonable inference that could be made, much less any substantial evidence presented, which went to proving that [Defendant] was involved in the robbery."

The record demonstrates that Defendant made a motion to dismiss at the close of the State's evidence. However, Defendant did not renew that motion at the close of all the evidence and therefore waived appellate review of the denial of his motion to dismiss. *See* N.C.R. App. P. 10(b)(3). Nevertheless, assuming *arguendo* that Defendant's argument under N.C.G.S. § 15A-1227(c) was not preserved, this is an appropriate case in which to invoke Rule 2 to address the issue of the sufficiency of the evidence. *See State v. Moncree*, 188 N.C. App. 221, 231, 655 S.E.2d 464, 470-71

(2008) (addressing the issue of the sufficiency of the evidence pursuant to N.C.R. App. P. 2 notwithstanding the defendant's failure to make a motion to dismiss at the close of all the evidence because our Court agreed with the defendant that two of the three charges should be vacated).

N.C.R. App. P. 2 provides:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

Our Supreme Court recently reiterated that "[a]side from the possibility of plain error review in criminal appeals, Rule 2 permits the appellate courts to excuse a party's default in both civil and criminal appeals when necessary to 'prevent manifest injustice to a party' or to 'expedite decision in the public interest.' " *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 192 N.C. ——, ——, 657 S.E.2d 361, 364 (2008) (citing N.C.R. App. P. 2). However, our Supreme Court cautioned that "Rule 2 . . . must be invoked 'cautiously,' " and reaffirmed its prior holdings "as to the 'exceptional circumstances' which allow the appellate courts to take this 'extraordinary step.' " *Id.* at ——, 657 S.E.2d at 364 (quoting *State v. Hart*, 361 N.C. 309, 315-17, 644 S.E.2d 201, 205-06 (2007) and *Steingress v. Steingress*, 350 N.C. 64, 66, 511 S.E.2d 298, 299-300 (1999)).

In the present case, we hold that the State failed to meet its burden of proving that Defendant was the perpetrator of the crime charged, which failure warranted the dismissal of the charge of robbery with a dangerous weapon. However, Defendant's trial counsel failed to renew Defendant's motion to dismiss at the close of all the evidence. If we do not review the issue of the sufficiency of the evidence in the present case, Defendant would remain imprisoned for a crime that the State did not prove beyond a reasonable doubt. Such a result would be manifestly unjust and we are therefore compelled to invoke Rule 2 under these exceptional circumstances. For the reasons stated above, Defendant's conviction of robbery with a dangerous weapon is reversed and the charge is dismissed. We need not address Defendant's remaining arguments.

**IN RE J.M., R.H. JR., C.S., A.S., R.M., & B.M.**

[190 N.C. App. 379 (2008)]

Reversed.

Judges WYNN and CALABRIA concur.