An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-36

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

|                      |                  |
|----------------------|------------------|
| v.                   | Forsyth County   |
|                      | No. 09CRS061925  |
| TONY MAURICE JAMES,  |                  |
| Defendant.           |                  |

Appeal by defendant from Judgments entered on or about 30 April 2013 by Judge William Z. Wood in Superior Court, Forsyth County. Heard in the Court of Appeals 21 May 2014.

> *Attorney General Roy A. Cooper III, by Assistant Attorney General Kenneth A. Sack, for the State.*

> *Kevin P. Bradley, for defendant-appellant.*

STROUD, Judge.

Tony James ("defendant") appeals from judgments entered after a Forsyth County jury found him guilty of second degree burglary and larceny after breaking or entering. We dismiss the appeal without prejudice to defendant's ability to bring his claim through a motion for appropriate relief.

I.   Background

On 21 February 2011, defendant was indicted for second degree burglary and larceny after breaking or entering. The indictment alleged that on 1 November 2009, defendant broke and entered the dwelling of Chelsea Davis with intent to commit a larceny therein. It further alleged that defendant stole approximately $2,000 worth of items belonging to Ms. Davis. Defendant pled not guilty and proceeded to jury trial.

At trial, the State's evidence tended to show that on the evening of 1 November 2009, Ms. Davis and Michael DiConzo, Ms. Davis' boyfriend, returned to the parking lot in front of their apartment to find four men carrying a variety of items across the bridge from their apartment. The items included a television, Xbox, various electronic cords, DVDs, and video games. Ms. Davis said to Mr. Diconzo, "That's all your stuff." Ms. Davis asked the four men, "Can I help you?" When Mr. DiConzo got out of the car, the four men started running. Mr. DiConzo began chasing the men along the sidewalk and down a slight hill. During the chase, one of the perpetrators dropped the Xbox, had a brief altercation with Mr. DiConzo and dropped the remaining items he was carrying. Mr. DiConzo briefly returned to the apartment to change shoes, then went back out to look for the

four men. He found his DVDs and video game cases strewn along the sidewalk and in some nearby bushes.

Around that same time, Sergeant Peterson, of the Winston-Salem Police Department, was patrolling the area. He noticed four men run out of the woods from the direction of Ms. Davis and Mr. DiConzo's apartment complex. One of them slowed to a walk and began traveling along the sidewalk; the other three began walking once they reached a parking lot. Sgt. Peterson thought the three men might have been chasing the first man, so he approached and asked the man who was walking alone if he needed assistance. The man declined Sgt. Peterson's assistance and said that he did not know the other three. At that point, the other three men took off running toward a nearby soccer field. Sgt. Peterson initially drove off to follow them, but he then received a call notifying him that there had been a break-in at one of the nearby apartment complexes with four suspects involved.

After receiving the call, Sgt. Peterson pulled back around to where the first man—later identified as defendant—was walking down the sidewalk and detained him with handcuffs. Once Sgt. Peterson secured the man, he noticed Mr. DiConzo pacing back and forth, breathing heavily. Mr. DiConzo told Sgt. Peterson that

his girlfriend's house had been broken into and that he was chasing the suspects. Mr. DiConzo, referring to the man in handcuffs, said, "That's one of them. That's one of the guys I chased down here."[1] Another officer detained two individuals walking back from the adjacent apartment complex. One of their phones had been located behind the apartment.

When police examined Ms. Davis' apartment, they found that the screen of the apartment's screened-in porch had been cut and that one pane of a double-pane glass door had been broken. They also noted that the top pane of a nearby window had been broken and the window had been opened. One of the forensic technicians collected fingerprints from the scene, two of which were sufficient for later testing. One fingerprint was found on the outside of the porch railing and another was found on one of the recovered video game cases. Masayo Ballard, latent print examiner for the Winston-Salem Police Department, compared the collected prints to defendant's. The first print was matched to defendant, but defendant was excluded as the source for the second print.

---

[1] At trial, the State never asked Mr. DiConzo to identify defendant as one of the men he chased from his apartment that night. Defendant's trial counsel did not move to exclude Mr. DiConzo's evidence as hearsay.

After the State rested, defendant moved to dismiss the charges against him. The trial court denied the motion. Defendant then elected to present evidence and testify on his own behalf. Defendant first called Officer Bryan Byerly of the Winston-Salem Police Department. Officer Byerly testified that he had assisted another officer in detaining two men[2] and doing a show-up with Ms. Davis. Ms. Davis identified them as two of the perpetrators. Neither was formally charged.

Defendant then testified on his own behalf. He explained that he was living in a nearby apartment complex with his parents. He testified that he went to a nearby gas station to buy a cigar and then began walking home. He was on his way home when Sgt. Peterson stopped him. Defendant could not explain how his fingerprint got on the porch railing, though he offered that perhaps the police had planted it. At the close of all the evidence, defendant again moved to dismiss the charges. The trial court again denied the motion.

The jury found defendant guilty of second degree burglary and larceny after breaking or entering. The trial court sentenced defendant to 10-12 months imprisonment for the

---

[2] These two men were not the same as the two Sgt. Peterson had mentioned.

burglary charge, suspended for 36 months of supervised probation, and a consecutive term of 5-6 months imprisonment, also suspended for 36 months of supervised probation. Defendant filed timely written notice of appeal to this Court.

## II. Ineffective Assistance of Counsel

In his only argument on appeal, defendant contends that he received ineffective assistance of counsel when his trial counsel failed to object to Mr. DiConzo's out-of-court identification as hearsay. We conclude that there is an issue of fact that we cannot resolve on direct appeal and must dismiss defendant's claim without prejudice.

> In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal. . . . [Nevertheless,] ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.

*State v. Allen*, ___ N.C. App. ___, ___, 756 S.E.2d 852, 856 (2014) (citations and quotation marks omitted).

> Criminal defendants are entitled to the effective assistance of counsel. When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below

an objective standard of reasonableness. In order to meet this burden defendant must satisfy a two part test. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Boozer*, 210 N.C. App. 371, 382, 707 S.E.2d 756, 765 (2011) (citation, quotation marks, and emphasis omitted), *disc. rev. denied*, ___ N.C. ___, 720 S.E.2d 667 (2012).

If the exclusion of the contested evidence would probably not have changed the outcome, then it would be immaterial whether the evidence was admissible. *See id.* So, we will first address whether "there is a reasonable probability that, but for [introduction of the contested evidence], there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985). We conclude that it is reasonably probable that but for introduction of Mr. DiConzo's out-of-court identification the jury would have reached a different result.

Here, the evidence without the challenged identification was extremely weak. The evidence showed that when Ms. Davis and Mr. DiConzo returned to their apartment they saw four males walking across the bridge from the apartment building. The four men were carrying various items belonging to Ms. Davis and Mr. DiConzo. When Mr. DiConzo began chasing them, all four took off running. He then lost sight of them.

Sgt. Peterson testified that he was driving by when he saw four males running out of the tree line by Mr. DiConzo and Ms. Davis' apartment complex. He pulled up to one of them—defendant—and asked if he needed help. The man declined any assistance and said he did not know the other three. That same night, the police had detained four other individuals suspected of being the perpetrators. The first two included one man whose phone was discovered behind the apartment. The other two were identified by Ms. Davis as two of the perpetrators, but never charged.

The police examined the apartment and found that the screen to the back deck of the apartment had been cut. One pane of a double-pane glass door had been broken. Additionally, they found one broken window, the apparent point of entry. The front door was open. Defendant's fingerprint was found on the outside

railing of the porch, near where the perpetrators entered the apartment. But the State points to no evidence that this fingerprint could only have been impressed at the time of the burglary. *Cf. State v. Irick*, 291 N.C. 480, 491-92, 231 S.E.2d 833, 841 (1977) ("Fingerprint evidence, standing alone, is sufficient to withstand a motion for nonsuit only if there is substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed." (citation, quotation marks, and emphasis omitted)). The fingerprint was on a railing outside of the apartment and defendant lived in a nearby apartment complex.[3] The police recovered another fingerprint from one of the stolen video game cases, but defendant was excluded as a possible source for that print. Thus, without the challenged evidence identifying defendant as one of the four men who broke into the

---

[3] Defendant testified that he thought the police may have "planted" his fingerprint at the scene. While we recognize that his explanation is highly unlikely, it is still true that the State had the burden of proof and failed to present any evidence, much less "substantial evidence[,] of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed." *Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841. The print was on the exterior of the apartment and the evidence does not indicate that it was in a location which would probably not be touched by anyone except a person breaking into the apartment.

apartment, the trial court should have granted defendant's motion to dismiss at the close of the State's evidence.

Since we have determined that the evidence now challenged by defendant was of such importance that its exclusion would have likely changed the outcome of the case, we must address whether the evidence was actually inadmissible. If so, the failure of defendant's trial counsel to object to the identification may have rendered his assistance constitutionally ineffective. We conclude that we lack sufficient evidence to make a determination as to this prong.

A witness' prior out-of-court statements may be used to either corroborate or impeach the witness' trial testimony, but may not be used as substantive evidence. *State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340, *cert. denied*, 531 U.S. 867, 148 L.Ed. 2d 110 (2000); *State v. Batchelor*, 190 N.C. App. 369, 373, 660 S.E.2d 158, 161 (2008). Defendant correctly notes that, unlike the federal rule, North Carolina's Rule 801 does not exempt out-of-court identifications from this rule. N.C. Gen. Stat. § 8C-1, Rule 801, commentary (2011). So, while an out-of-court identification may be admissible as a prior consistent statement to corroborate a witness' testimony, or as a prior inconsistent statement to impeach the witness, it is not

admissible as substantive evidence. *State v. Murphy,* 100 N.C. App. 33, 39, 394 S.E.2d 300, 303-04 (1990) (holding that the victim's out-of-court statements that the defendant committed fellatio were hearsay where the victim did not testify at trial that he committed fellatio).

Here, the out-of-court statement was not offered to either corroborate or impeach any witness' testimony. Mr. DiConzo testified that he identified the man Sgt. Peterson had detained as one of the men whom he had been chasing. Sgt. Peterson testified to the same. At trial, the State did not ask Mr. DiConzo to identify defendant as the person he saw running from the apartment. Mr. DiConzo's testimony is hearsay because it is an out-of-court statement admitted for the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801 (2011). Because there was no in-court statement to corroborate or contradict, its only relevance here is a hearsay purpose—to show that defendant was, in fact, the person Mr. DiConzo saw in front of his apartment. There is no applicable exception to the general rule that hearsay is inadmissible. *See* N.C. Gen. Stat. § 8C-1, Rule 802 (2011); N.C. Gen. Stat. § 8C-1, Rule 803 (2011). Indeed, the State does not even argue that the out-of-court identification was admissible as substantive evidence. Therefore, had

defendant's trial counsel objected to this evidence, the trial court would have been required to sustain the objection and exclude the evidence.

Nevertheless, "[w]here the strategy of trial counsel is well within the range of professionally reasonable judgments, the action of counsel is not constitutionally ineffective." *State v. Canty*, ___ N.C. App. ___, ___, 736 S.E.2d 532, 535 (2012) (citation and quotation marks omitted), *disc. rev. denied*, ___ N.C. ___, 739 S.E.2d 850 (2013). Here, there is an issue of fact about whether defendant's trial counsel made a strategic decision not to object to this evidence.

The evidence was introduced twice at trial—once through Mr. DiConzo himself and once through Sgt. Peterson. Mr. DiConzo's testimony was somewhat vague on this point. The prosecutor asked, "Did you identify the individual that the officer had detained at that point in time? On that day, did you identify that individual as being one of the individuals that broke into your apartment?" Mr. DiConzo responded, "I certainly did." The State did not then clarify whether Mr. DiConzo recognized defendant as the person whom he had identified or ask Mr. DiConzo to identify defendant as the person he had seen in front of the apartment. It is possible that trial counsel decided not

to object to this hearsay evidence for fear of bringing that omission to the attention of the State. But it is also possible that trial counsel simply failed to object without such a strategic reason, and it is possible that Mr. DiConzo would have been unable to identify defendant as the man he had identified on the night of the break-in. We cannot resolve this issue based on the "cold record" before us. So, we must dismiss defendant's ineffective assistance claim without prejudice to his ability to raise this issue through a motion for appropriate relief. *See Allen*, ___ N.C. App. at ___, 756 S.E.2d at 856.

If the trial court determines that defendant's trial counsel made a strategic decision not to object to the out-of-court identification by Mr. Diconzo, then defendant received no ineffective assistance of counsel. Once the out-of-court identification was in evidence through Mr. DiConzo's testimony, any error in failing to object to the same evidence being later introduced through Sgt. Peterson would not be prejudicial.

## III. Conclusion

For the foregoing reasons, we dismiss defendant's claim of ineffective assistance of counsel without prejudice to his ability to bring the claim through a motion for appropriate relief.

DISMISSED.

Judge STEPHENS and MCCULLOUGH concur.

Report per Rule 30(e).