This is the second appeal by the plaintiff in this cause, the first being from a judgment of nonsuit at the close of the plaintiff's evidence, and is reported in 156 N.C. 519. This appeal is from the jury's verdict, the usual issues of negligence, contributory negligence, and (49) amount of damage being submitted to the jury without objection.
The defendant lumber company maintains certain logging or tramroads, operated exclusively for the purpose of bringing its logs from its logging woods out to its main line. The tramroad upon which the accident occurred, for which this action is brought, connects with its main line of road and runs from it out into the timber woods. The train consisted of twelve or thirteen log cars, two of which, about midway the train, were loaded with feedstuff for the camp. The object was to place the empties upon the spur and thus connect all the empties, and then proceed to the camp with the engine and loaded cars alone.
The log cars in use by the defendant were such as are in general and common use by lumber companies. They were skeleton log cars, with four stringers, about 6 x 6, six inches apart, running lengthwise down the middle of the cars, across which there was a bolster at either end of the car about 3 feet from the coupling. The cars were coupled together with link and pin, and in addition to the bolsters at either end of the car there was a beam about 4 x 6 inches across the car between the bolster and the coupling. The bolsters are about 12 inches in width, and extend in length over beyond the wheels. The top of the box of the wheel (called the journal box) is of a flat surface (about 8 inches square), and is about 2 feet from the bolster, and could be used in stepping on and off the car.
The plaintiff's intestate was employed by defendant, as fireman, on Friday before he was killed. It was a part of his duty to couple and uncouple and to do the switching. The work desired of the intestate upon the day of the injury was to uncouple certain cars while the whole train was backing, then to get off the car after so uncoupling, go to the switch below, getting there in time to change the switch (after the cars he had uncoupled had gone into the switch) before the next cars, which were to be uncoupled, had reached the switch, so that the latter cars cut off by the witness Emmerson would go straight down the track. Then the switch was again to be changed to let the other cars go therein. The two loaded cars, about the middle of the train, were to go straight *Page 42 
down the track, and the empties in front of and behind the two (50) loaded cars were to be placed in the spur. There was no standard or arms on the car from which the intestate was to alight. The engineer was backing at a rate of somewhere from 5 to 8 miles per hour, and it was a slight down grade, and when the cars were uncoupled they separated and ran down the track of their own motion. It is undisputed that the plaintiff was ordered to do this work, and it is not denied that the method set out was the method adopted and used by the defendant.
It is admitted that there are two ways that this shifting of cars could be accomplished: one by the method above set out, that is, not stopping the motion of the train; and the other by backing the cars into the spur, stopping, uncoupling, then moving out, backing straight down the track, stopping, uncoupling the cars desired to be left on the main track, then moving up and backing the other cars into the spur, and stopping, uncoupling, and leaving them. Plaintiff's witnesses testified that the loss of time by the use of the latter method is from three to five minutes, while the defendant's witnesses estimate as much as fifteen minutes loss thereby.
It is not disputed that plaintiff had to go out from the engine over the moving skeleton log cars on the stringers, sit down on the beam and pull out the pin, so as to uncouple, then get off the car in order to proceed with his duties, and change and rechange the switch.
The intestate fell from the car and was killed by the car running over him.
The plaintiff contended that he fell while pulling out the pin, and the defendant contended that he had finished uncoupling the cars, and that he unnecessarily stood up on the bolster and fell from that position. Evidence was introduced to sustain both contentions.
The jury returned the following verdict:
1. Was the plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: No.
 2. Did the plaintiff's intestate contribute to his death by his own negligence, as alleged in the answer? Answer: Yes.
(51) 3. What sum is plaintiff entitled to recover? Answer: (No answer).
Judgment was rendered upon the verdict in favor of the defendant, and the plaintiff appealed.
Admitting, for the purposes of this appeal, that the defendant was negligent, the controversy on the first issue was reduced to the question of proximate cause, and on the second to the inquiry whether the plaintiff was negligent, and, if so, was this the real cause of death.
If it was dangerous and negligent to require the plaintiff's intestate to pass over a skeleton car while in motion, or to use the link and pin coupler, or to lean over between the cars to uncouple, those facts, while evidence of negligence, were of the past, and could not have been the proximate cause of death, provided the intestate passed over the car, leaned over and completed the uncoupling in safety, and, after doing so, unnecessarily placed himself in a dangerous position on the bolster, when there was another safe way for him to leave the car.
It became, then, most important to ascertain the position of the plaintiff at the time he fell, and if the defendant was negligent and the intestate was also negligent, in unnecessarily going into a place of danger, both concurring in causing death, the negligence of the plaintiff was proximate, and it was proper to answer the first issue in the negative and the second in the affirmative. Pinnix v. Durham, 130 N.C. 360; Curtisv. R. R., 130 N.C. 440; Harvell v. Lumber Co., 154 N.C. 262.
In the last case cited, the Court states the rule as follows: "If, however, the plaintiff was negligent, and this negligence caused him to stumble and fall, he could not recover, although the defendant was also negligent, because this would present a case of concurrent negligence, and it is well settled that when the plaintiff and defendant are negligent, and the negligence of both concur and continue to the time of the injury, the negligence of the defendant is not in the legal sense proximate."
This view is not in conflict with the statement that contributory negligence presupposes negligence on the part of the defendant (52) (Whitley v. R. R., 122 N.C. 989; Graves v. R. R., 136 N.C. 9), because in the first issue two facts are involved: (1) negligence, (2) proximate cause; and it cannot be said that contributory negligence presupposes proximate cause. If it did so, the second issue would be a vain and useless thing.
It follows, therefore, that there was a phase of the evidence which supported the findings of the jury, and that the verdict is not condemned as inconsistent, which rests "upon the ground that there are two responses to different issues, one of which would support a decree for the defendant, while the other would entitle the plaintiff to recover." Stern v. Benbow,151 N.C. 463.
In Backer v. R. R., 118 N.C. 1017, the jury answered the first and second issues "Yes," and awarded the plaintiff $1,000, and the Court held the finding upon the second issue determinative, and that the defendant was entitled to judgment, and in Harris v. R. R., 132 N.C. 162, *Page 44 
the three issues of negligence, contributory negligence, the last clear chance, were answered "Yes" and damages were awarded, and upon these findings a judgment in favor of the plaintiff was sustained.
The jury, in the case before us, has answered the first issue "No" and the second issue "Yes," and as we have seen that these findings are supported by the evidence, and are not inconsistent, and as the plaintiff cannot recover as long as the answer to the second issue stands, it is not necessary for us to consider the exceptions (about thirty in number) arising upon the first issue, if no error is shown affecting the second issue. Ginsberg v. Leach, 111 N.C. 15; Allen v. McLendon, 113 N.C. 325.
There are several exceptions bearing on the second issue.
The first is to permitting a witness for the defendant to say there was a safer way to get off the car than by walking on the bolster. If this was erroneous, it is not prejudicial, because, on cross-examination, the witness was asked substantially the same question and gave the same answer.
The other exceptions on this issue are to the refusal to give (53) certain prayers for instructions, and to parts of the charge as given.
The first prayer for instruction was properly denied, because it relates to assumption of risk, as to which no issue was submitted to the jury, and it also appears that his Honor substantially instructed the jury as to the degree of care required of the intestate, as the plaintiff requested, when he said: "While the law requires an employer to furnish a reasonably safe place for its employee to work, and reasonably safe appliances with which to do his work, it requires of the employee, the servant, to go about his work in a reasonably prudent manner. While he may trust that his employer or master has furnished a reasonably safe place and appliances in which to do the work, provided the danger is not so obvious that a reasonably prudent man would see that in doing the work he was in greater danger of getting hurt than not getting hurt, he may go about the work, but he is required to exercise reasonable caution and prudence himself, because it is his duty to take notice of the conditions which surround him, and he must exercise the care of a reasonably prudent man. This the defendant contends the plaintiff did not do, and that he was careless in getting up and getting on the bolster, and not careful to take care of himself so as to stoop down as he might have stooped down by exercising reasonable care."
The material part of the second prayer is also covered by the above excerpt from the charge, but the instruction is also objectionable, upon the ground that it is predicated upon the theory that the intestate was killed while uncoupling the car, while the contributory negligence *Page 45 
alleged and relied on was that the uncoupling had been finished, and that he negligently stood on the bolster when it was unnecessary for him to do so.
His Honor stated distinctly to the jury that the contention of the defendant was that the intestate was negligent in getting up and standing on the bolster, which was not a method employed by the defendant. In other words, the plaintiff said that his intestate was required to pass across a skeleton car while in motion, to sit on a beam, to lean over and uncouple, and that while performing this duty he fell and was killed, and requested his Honor to charge the jury upon this (54) theory he would not be guilty of contributory negligence, unless the danger was so apparent and obvious that a reasonable person would have refused to attempt to do the work, while the defendant did not contend that he was guilty of contributory negligence if injured in this way, but that after he had uncoupled he negligently stood on the bolster and was injured.
The other exceptions on this issue are to parts of the charge which follow approved precedents.
We have examined the exceptions to the first issue and do not intimate that any were well taken, but as we find no error on the second issue, which determines the appeal, it is not necessary to discuss them.
No error.
Cited: Sasser v. Lumber Co., 165 N.C. 243; Carter v. R. R., ib., 255;Holton v. Moore, ib., 551.