STATE OF NORTH CAROLINA, Plaintiff v. SHAQUANA FEATHERSON, Defendant

No. COA00-471

(Filed 17 July 2001)

**1. Evidence— hearsay—prior statements—impeachment**

The trial court did not err in a prosecution for the robbery of a Bojangles by admitting alleged hearsay statements from codefendants where the codefendants' pretrial statements implicated defendant, their testimony at trial exonerated defendant, and the court instructed the jury that the statements were to be considered as impeaching rather than as substantive evidence. Furthermore, other evidence to the same effect was elicited on cross-examination by defendant or was admitted without an objection, a motion to strike, or a request for limiting instructions and there was no prejudice.

**2. Robbery— armed—sufficiency of evidence—statements by codefendants**

The trial court did not err in an armed robbery and conspiracy to commit armed robbery prosecution by denying defendant's motions to dismiss where statements by codefendants (held above to be properly admitted) were sufficient standing alone to support defendant's convictions.

**3. Kidnapping— second-degree—restraint and removal—integral part of robbery**

The trial court erred by denying a motion to dismiss a second-degree kidnapping charge in an action arising from an armed robbery prosecution where the restraint and removal of the victim were an inherent and integral part of the robbery.

Appeal by defendant from judgment entered 3 November 1999 by Judge B. Craig Ellis in Columbus County Superior Court. Heard in the Court of Appeals 20 April 2001.

STATE v. FEATHERSON

[145 N.C. App. 134 (2001)]

*Attorney General Michael F. Easley, by Associate Attorney General Vandana Shah, for the State.*

*Webb & Webb, by John Webb, for the defendant.*

SMITH, Judge.

In December 1998, defendant was 20 years old, single with two children, and living with her boyfriend, Jeffrey Lester. During this time, she was employed as a cashier at a Bojangles' restaurant in Whiteville, North Carolina.

On 12 December 1998, at about 4:30 p.m., defendant and her boyfriend Lester went to the residence of their mutual friend, Alphonso McDonald. Defendant and Lester spent the night at McDonald's residence. Sometime during that evening, the three discussed robbing the restaurant where defendant was employed.

The next morning (13 December 1998), Lester and McDonald drove defendant to her employment, dropped her off in the parking lot at approximately 6:30 a.m. and drove away. Lester and McDonald drove to a gas station near the restaurant and parked the car behind several trash dumpsters.

Defendant went to the rear door of the restaurant and rang the door buzzer. Defendant had been previously instructed not to use this door. The restaurant manager, Theresa Pittman, and employee Kathy Huggins were inside. Defendant waited for Pittman or Huggins to open the rear door, and when neither appeared, defendant again rang the buzzer. This time Pittman responded.

Pittman went to the door, saw defendant, turned off the alarm and opened the door. Lester and McDonald came from behind defendant, pushed her inside and entered behind her. Both men were wearing masks and McDonald was carrying a nine-millimeter assault rifle. McDonald told defendant, Pittman, and Huggins they were being robbed.

Lester forced defendant and Huggins to the floor and then loosely bound them together using duct tape. McDonald forced Pittman to the office and ordered her to open the safe. Usually, the safe only contained one bag of money for deposit, but on this occasion, the safe contained three deposit bags.

When Pittman opened the safe, McDonald grabbed the three deposit bags and fled the office. McDonald and Lester then ran out

STATE v. FEATHERSON

[145 N.C. App. 134 (2001)]

the rear door. When the two men left, Pittman discovered that defendant and Huggins had already freed themselves. Huggins called the police.

Defendant was charged with robbery with a dangerous weapon, first-degree kidnapping, and conspiracy to commit armed robbery by true bills of indictment, respectively, dated 22 February 1999, 29 May 1999, and 28 June 1999. On 1 November 1999, defendant's case came on for a jury trial, and subsequently verdicts of guilty were returned as to each of the three indictments.

After considering the mitigating and aggravating factors, and based on defendant's having a prior record Level I, the trial court sentenced defendant to the following presumptive active sentences: 1) a term of 64-86 months for robbery with a firearm—with credit for 281 days spent in confinement prior to judgment, 2) 25-39 months for second-degree kidnapping, and 3) 25-39 months for conspiracy to commit robbery with a firearm. All sentences run consecutively.

Defendant gave timely notice of appeal. By order dated 22 November 1999, the trial court relieved the Office of the Appellate Defender of its duties and appointed attorney John Webb to represent defendant.

On appeal, defendant makes two arguments. First, that the trial court erred in admitting hearsay statements of McDonald and Lester in evidence regarding defendant's involvement in the crimes charged. Second, defendant argues that the trial court erred in denying her motions to dismiss, arguing that absent the hearsay evidence, the remaining evidence was insufficient for the jury to find defendant guilty.

We find no error as to the convictions of robbery with a firearm and conspiracy to commit robbery with a firearm. However, we reverse the conviction of second-degree kidnapping of Huggins.

I. ADMISSION OF EVIDENCE REGARDING DEFENDANT'S INVOLVEMENT IN ROBBERY WITH A FIREARM AND CONSPIRACY TO COMMIT ROBBERY WITH A FIREARM.

[1] Defendant first argues that the trial court erroneously admitted considerable hearsay evidence against her. Specifically, she argues that the trial court erred in: 1) admitting in evidence the prior written statements of the two codefendants; 2) allowing the State to elicit testimony from the codefendants that they told police following their

arrest that defendant was involved in the crimes; and 3) allowing the police officers to testify that the codefendants had implicated defendant in their statements.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1999). In the instant case, the alleged hearsay evidence was not admitted for its truth. Instead, the evidence was admitted for impeachment. *See State v. Hunt*, 324 N.C. 343, 350, 378 S.E.2d 754, 758 (1989) (allowing prior inconsistent statements in evidence when "the witness's testimony was extensive and vital to the government's case, that the party calling the witness was genuinely surprised by his reversal, or that the trial court followed the introduction of the statement with an effective limiting instruction.") *Id.* (citations omitted). Immediately following their arrest, Lester and McDonald made statements to the police that implicated defendant in the crimes. At trial, their testimony exonerated defendant from any participation in the crimes charged. The codefendants' prior statements were admissible in evidence to attack the codefendant's credibility. The trial court instructed the jury that the statements were to be considered as impeaching, not substantive evidence. We conclude that the statements were properly admitted.

While impeachment would be a valid theory of admissibility in this case, it is not necessary to address the issue. The trial transcript reveals statements made by codefendants were also properly admitted as substantive evidence.

"Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence." *State v. Wilson*, 313 N.C. 516, 532, 330 S.E.2d 450, 461 (1985). In McDonald's direct examination, he testified to what he told Detective Benton without objection or timely motion to strike. Defendant objected to the State's attempt to read McDonald's written statement to McDonald, and the objection was sustained. The State then asked McDonald what he told the Detective, and no timely objection was made. Defendant thus waived his right to assign as error the admission of McDonald's written statement. "It is well settled that exception to the admission of evidence will not be sustained when evidence of like import has theretofore been, or is thereafter, introduced without objection." *Gaddy v. Bank*, 25 N.C.

App. 169, 173, 212 S.E.2d 561, 564 (1975). This evidence was admitted without any limitation.

Defendant assigns error on the direct examination of Investigator Coleman to the admission in evidence of the statement made to the Investigator by Lester following Lester's arrest. However, during cross-examination of Investigator Coleman, defendant elicited substantially the same statement. The erroneous admission of evidence on direct examination is held not to be prejudicial when it appears that on cross-examination "the witness was asked substantially the same question and gave the same answer." *Hamilton v. Lumber Co.*, 160 N.C. 48, 52, 75 S.E.2d 1087, 1089 (1912).

Consequently, even if the written statements and testimony of codefendants had been improperly admitted, other evidence to the same effect was admitted without objection, motion to strike, request for limiting instruction or were elicited on cross-examination by defendant and may not be claimed to be prejudicial.

## II. DENIAL OF DEFENDANT'S MOTIONS TO DISMISS THE ARMED ROBBERY AND CONSPIRACY CHARGES

[2] Next, defendant argues that the trial court erred in denying her motion to dismiss made at the end of the State's case and at the end of all evidence, since without the improperly admitted hearsay statements, there is not sufficient evidence of defendant's guilt.

Our Supreme Court has held that, when a trial court considers a motion to dismiss for insufficiency of evidence,

[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980) (citing *State v. Thomas*, 296 N.C. 236, 250 S.E.2d 204 (1978)) and *State v. McKinney*, 288 N.C. 113, 215 S.E.2d 578 (1975).

When the defendant moves for dismissal, the court must determine if there is substantial evidence of each essential element of the crime charged (or of a lesser included offense), and evidence that defendant committed the offense. *State v. Earnhardt*, 307 N.C. 62,

65-66, 296 S.E.2d 649, 651-52 (1982). If the aforementioned evidence exists, "the motion to dismiss is properly denied." *Id.* at 66, 296 S.E.2d at 652.

After considering the elements of armed robbery and conspiracy to commit armed robbery, we hold that the trial court properly denied defendant's motion to dismiss as to those charges. The alleged hearsay evidence was either properly admitted, or admitted without objection. This evidence includes statements by codefendants which implicate defendant in the crimes. This evidence, standing alone, constitutes sufficient evidence to deny defendant's motion to dismiss. Accordingly, on the armed robbery and conspiracy to commit armed robbery charges, there was no error in denying defendant's motion to dismiss.

III. DENIAL OF DEFENDANT'S MOTION TO DISMISS THE KIDNAPPING CHARGE

[3] Based on the record here, we hold that the trial court erred in denying the motion to dismiss the second-degree kidnapping charge and submitting the offense of second-degree kidnapping to the jury. Though not specifically raised or argued on appeal, the denial of the motion to dismiss the kidnapping charge which is the subject of an assignment of error did present this issue to the trial tribunal. In the exercise of our supervisory jurisdiction pursuant to N.C.G.S. § 7A-32(c) and to prevent a manifest injustice pursuant to N.C.R. App. P. 2, we address this issue.

In the case at bar, Lester and McDonald entered the restaurant through the back door after pushing defendant inside. Employee Huggins was already in the room when defendant was pushed inside. McDonald told defendant, Pittman, and Huggins that they were being robbed. Lester ordered Huggins to come to him. Huggins and defendant were forced to the floor, while Lester taped them together in such a manner as to allow them to escape quickly. As Lester taped Huggins and defendant, McDonald forced Pittman to open the office safe. When Pittman opened the safe, McDonald grabbed the deposit bags, and he and McDonald ran out of the back door leaving Pittman in the office. When the two men left, Pittman discovered that defendant and Huggins had already freed themselves. Huggins then called the police.

Based on these facts, the restraint and movement of Huggins was an inherent and integral part of the armed robbery. This restraint and movement was not sufficient to sustain a conviction for second-

degree kidnapping. *See State v. Little*, 133 N.C. App. 601, 606, 515 S.E.2d 752, 756, *disc. review denied*, 351 N.C. 115, 540 S.E.2d 741 (1999) (holding that the pertinent issue is "whether the removal involved is integral to the commission of the underlying offense"); *State v. Thompson*, 129 N.C. App. 13, 15, 497 S.E.2d 126, 127 (1998) (stating that a conviction for kidnapping is prohibited if the "removal of the victim from one place to another is not an act separate and distinct from any other act which is an inherent and inevitable part of the commission of another convicted offense"). Huggins was already in the same room as the robbers when she was bound to defendant. Huggins was exposed to no "greater danger than that inherent in the armed robbery itself, nor [was she] subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981). Thus, we find error in defendant's conviction for second-degree kidnapping of Huggins.

In summary, we hold that defendant's conviction of armed robbery and conspiracy to commit armed robbery were without error. As to the offense of second-degree kidnapping, we conclude that the trial court erred in denying the motion to dismiss, and therefore defendant's conviction for that offense must be reversed.

No error in case Nos. 99 CRS 1037 and 5168. Case No. 99 CRS 4295 is reversed.

Chief Judge EAGLES and Judge McCULLOUGH concur.