STATE OF NORTH CAROLINA
v.
CARNELL LAVANCE CALHOUN.
No. COA07-1223
Court of Appeals of North Carolina
Filed July 1, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Mary Carla Hollis, for the State.
Robert W. Ewing, for defendant-appellant.
JACKSON, Judge.
Carnell Lavance Calhoun ("defendant") appeals from judgments entered upon guilty verdicts for felony breaking and entering, attempted first-degree rape, robbery with a dangerous weapon, two counts of first-degree sexual offense, and two counts of second-degree kidnapping. For the following reasons, we hold no error.
In the early morning on 24 February 2005, defendant and David Moore ("Moore") entered the home of Steven White ("White") in Fairview, North Carolina. At the time, White, White's roommate Roderick Monk ("Monk"), and White's friend Kimberly Rowell ("Rowell") were asleep in the residence. Defendant and Moore entered White's bedroom and tied him up with electrical cords. White then awoke and observed Moore standing at the end of his bed and pointing a rifle at his face. White, who had gotten into an argument with Moore the previous day over a failed drug deal, asked Moore what was happening. Defendant, holding a knife, told White to be quiet and that nothing would happen to him. Defendant took approximately $40.00 and an ounce of marijuana from the pockets of White's pants, which were laying on the bedroom floor. Defendant left the room, and White again asked Moore what was happening. White testified, "I kept asking him that. He wouldn't say much to me."
Rowell, who had been sleeping on the couch in the living room, awoke to find defendant standing over her and ordering her to get up. Rowell thought he was joking until he brandished the knife and threatened to cut her. After getting up from the couch, Rowell observed White tied up in his bedroom with a gun pointed to his head. Rowell became frightened and started crying hysterically and begging defendant to stop. Defendant ordered her to be quiet and to "move; move; move." Defendant took Rowell to Monk's bedroom, and after observing Monk asleep in the room, ordered Rowell into an unoccupied guest room. There, defendant ordered Rowell to remove her clothes, threatening to cut her with his knife if she refused. Defendant then forced Rowell to perform fellatio on him.
Meanwhile, Moore left White's bedroom, and White, still tied up, followed Moore to the kitchen area, where Moore was standing in front of the residence's front door. Monk, who awoke after hearing Rowell's cries, left his bedroom, and while walking down the hallway, he observed defendant, standing in front of Rowell and pressing a knife against her. Monk testified that he was in shock and continued down the hallway, and that as he entered the area in which Moore and White were standing, Moore pointed his rifle at him.
After defendant left the guest room, Rowell dressed and attempted to escape through a window, but was unable to open the window as it was bolted down. Rowell heard Moore tell defendant to return to the guest room and "have some more fun." Defendant returned to the guest room and became upset that Rowell was dressed. Defendant pressed his knife to Rowell's throat, demanded that she take her clothes off, and threatened to cut her face. Rowell begged defendant to stop, but defendant ordered her to her knees and demanded that she once again perform fellatio on him, stating, "Quit crying. Act like you like it. Quit crying. Shut the f*** up." Rowell said she did not want to, but defendant stated that "[h]e could care less." Defendant then made Rowell stand up, and he inserted his fingers into her vagina. While still standing, defendant tried to engage in sexual intercourse with Rowell. Rowell testified, "[I thought] he was going to rape me and he was going to kill me, and my friends were going to die." However, defendant stopped trying to have intercourse with her, and ran out of the room. Defendant and Moore then ran out of the house and walked to Moore's nearby home. On the way, Moore buried the rifle in a ditch. After defendant and Moore left, Rowell dressed again, ran to the kitchen, and untied White. Monk ran outside, but soon returned and informed White and Rowell, "I couldn't catch them. We have flat tires. All of us have flat tires." Rowell later discovered that her wallet was missing from her car, and White discovered that his gun was missing from his residence.
A few hours after defendant and Moore left White's residence, police apprehended Moore at his residence, and Moore gave a statement incriminating himself and defendant. With Moore's help, the police were able to recover the rifle. An employee of a local trash service found Rowell's wallet and gave it to the police. The police also found White's gun in an overnight bag located in an abandoned motel room defendant had rented two days prior to the robbery. Defendant subsequently was arrested.
On 22 March 2006, defense counsel moved to have defendant committed to Dorothea Dix ("Dix") for an examination to determine his capacity to proceed to trial. The trial court granted the motion, and on 11 April 2006, defendant was committed to Dix, where he was evaluated by Dr. David Bartholomew ("Dr. Bartholomew"). On 8 May 2006, defendant was released from Dix, and Dr. Bartholomew opined that defendant was competent to proceed to trial.
While at Dix, defendant conveyed to defense counsel that he wished to represent himself. After his release from Dix, defendant again stated that he wished to represent himself. On 21 June 2006, defense counsel moved to withdraw, and on 29 June 2006, the trial court held a hearing on the motion. By order entered 30 June 2006, the trial court noted that it had "concerns regarding the defendant's competency to proceed in this matter." After denying the motion to withdraw, the trial court directed defense counsel to locate a qualified mental health professional to evaluate defendant, and on 21 July 2006, the court appointed John R. Clement ("Clement") to evaluate defendant.
On 5 September 2006, defense counsel filed a motion for a hearing to determine defendant's capacity, and at the 11 September 2006 hearing, the trial court reviewed Clement's report and Dix's report and heard testimony from Clement, defendant, and Dr. Bartholomew. Clement, who met with defendant for two, one-hour sessions, noted that defendant
evidenced a number of odd mannerisms. In particular, he repetitively touched his face, hair and arms in a compulsive fashion. . . . His speech was fast paced, and his conversation was grossly disorganized, bordering on incoherent[, and] . . . might best be described as "word salad" (i.e., a hodgepodge of both real words and neologisms).
Clement also explained defendant could not answer his questions concerning the criminal charges before defendant became "derailed", and that he believed that defendant has disorganized schizophrenia. However, Clement also stated that defendant (1) "was alert and oriented to time, person, place"; (2) "had a limited understanding of the role of a psychologist"; (3) "seems to know the charges against him"; (4) "seems to understand that he is the accused"; (5) "may marginally have the capacity to understand the basic trial process," including the role of the attorneys, judge, and jury; and (6) "expressed doubts about the adequacy of his attorney, saying he wanted to represent himself." Additionally, Clement acknowledged that "with considerable patience, one can perhaps understand the crux of [defendant's] conversation." Clement ultimately opined that defendant was "not competent to assist his attorney" and that defendant's condition "absolutely" impacts his ability to proceed.
Dr. Bartholomew disagreed with Clement's belief that defendant had disorganized schizophrenia. He noted that defendant's speech became more disorganized and antagonistic when discussing his criminal proceedings, and that his frustration and disorganization when discussing his case would impair his ability to communicate with his attorney. However, Dr. Bartholomew also testified that during the four weeks that defendant was at Dix, defendant followed the hospital's rules, cooperated with the staff, and exhibited no disorganized behavior. Dr. Bartholomew further testified that defendant understood and communicated (1) what it meant to plead guilty and not guilty; and (2) the roles of the defense counsel, district attorney, judge, and jury. Ultimately, Dr. Bartholomew testified that defendant was able to assist his attorney if he chose to do so and was competent to proceed to trial.
At the conclusion of the 11 September 2006 hearing, the trial court found that "defendant does speak in a peculiar form and fashion," but that "due to the repetition and other things involved with it, one can decipher what he is concerned about and cares about and is obsessed with regard to his particular cases." The court found that defendant had provided a "reasonable definition of what extradition means" as well as a summary of "the role of all court personnel involved in this case[.]" The court noted that defendant was aware of the charges as well as the facts underlying the charges. Ultimately, the court concluded that defendant "is competent to stand trial for those charges."
On 23 October 2006, the day before trial was scheduled to commence, defense counsel renewed his motion to determine defendant's capacity to proceed, alleging that defendant was unable to provide the most basic assistance in the preparation of his case and that defendant was so obsessed with having his case dismissed that he would not talk about anything else. On 24 October 2006, defense counsel expressed his concerns in open court. He did not know whether defendant's condition had changed since the 11 September 2006 hearing, and stated, "[I]f the court is satisfied [with allowing defendant to proceed], that's satisfactory to me." The trial court questioned defendant, who stated, inter alia, that he was prepared to proceed to trial, wished to continue being represented by defense counsel, and was capable of assisting defense counsel with the trial. The trial court nevertheless appointed Bradford Owen ("Owen"), a licensed psychological associate and certified forensic examiner, to evaluate defendant's capacity to proceed. Owen, who was provided with a copy of both Dix's report and Clement's report, testified that after speaking with defendant for approximately one hour, he was of the opinion that defendant "does not suffer from a clinical illness or mental illness that would impair his ability to proceed to trial." Owen believed that defendant's "eccentricities of speech . . . are attempts to present himself as an intelligent man who's trying to communicate his understanding of the legal system." Owen "did not see a disorganized schizophrenia," and although he believed that defendant may have "a personality disorder, . . . there's nothing . . . that would suggest . . . that he has an incapability to understand the proceedings before him, the charges he faces or an inability to participate with his defense attorney."
At the conclusion of the 24 October 2006 hearing, the trial court determined that defendant was competent to proceed. On 9 November 2006, the trial court entered an order, finding that, inter alia: (1) defendant previously was determined to be capable to proceed to trial; (2) defendant understood the roles of various participants in the trial; (3) both Owen and Dr. Bartholomew opined that defendant was not schizophrenic; (4) defendant was aware that he was innocent until proven guilty; (5) Owen opined that defendant understood the nature of the criminal proceedings, comprehended his situation, and was capable of assisting in his defense in a rational manner; (6) defendant's incomprehensible manner of speech appeared to be an intentional "attempt to put together words in a fashion that he believed were consistent with an intelligent presentation of his position"; and (7) the court "was able to ascertain what the defendant was requesting in most instances if the [c]ourt persisted in asking the defendant to clarify his requests." The court concluded that defendant had the capacity to proceed to trial and that defendant failed to meet his burden of demonstrating that, "due to a mental illness or defect, [he] [wa]s unable to understand the nature and the object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner."
On 27 October 2006, a jury found defendant guilty of attempted first-degree rape, first-degree kidnapping, second-degree kidnapping, robbery with a dangerous weapon, felony breaking and entering, and two counts of first-degree sexual offense. On 30 October 2006, the trial court sentenced defendant as a prior record level I offender to the following consecutive terms of imprisonment: (1) 240 to 297 months for first-degree sexual offense; (2) 240 to 297 months for first-degree sexual offense, to run concurrently with twenty-four to thirty-eight months for second-degree kidnapping and 132 to 168 months for attempted first-degree rape; (3) sixty to eighty-one months for robbery with a dangerous weapon; and (4) twenty-four to thirty-eight months for second-degree kidnapping, to run concurrently with six to eight months for felony breaking and entering. Defendant gave timely notice of appeal.
On appeal, defendant first contends that the trial court erred in determining that he was competent to stand trial. We disagree.
"It is well established, of course, that the conviction of an accused person while he is legally incompetent violates due process and that state procedures must be adequate to protect this right." State v. Taylor, 298 N.C. 405, 410, 259 S.E.2d 502, 505 (1979). Pursuant to North Carolina General Statutes, section 15A-1001(a), [n]o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.
N.C. Gen. Stat. § 15A-1001(a) (2005).
The test for determining a defendant's capacity to stand trial is whether, at the time of trial, the defendant has "the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed."
State v. Tucker, 347 N.C. 235, 241, 490 S.E.2d 559, 562 (1997) (quoting State v. McCoy, 303 N.C. 1, 18, 277 S.E.2d 515, 528 (1981)).
"The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a) (2005). "When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A-1002(b) (2005). "Defendant has the burden of persuasion with respect to establishing his incapacity." State v. Gates, 65 N.C. App. 277, 283, 309 S.E.2d 498, 502 (1983). "[I]t is the [trial] court's duty to resolve conflicts in the evidence" and its "findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary." State v. Heptinstall, 309 N.C. 231, 234, 306 S.E.2d 109, 111 (1983)(citation omitted). Ultimately, "[w]here the procedural requirement of a hearing has been met, defendant must show that the trial court abused its discretion in denying the motion before reversal is required." Gates, 65 N.C. App. at 284, 309 S.E.2d at 502 (citation omitted).
In the case sub judice, defendant contends that (1) the trial court's findings from the 11 September 2006 and 24 October 2006 hearings fail to address whether defendant was able to communicate effectively with defense counsel; (2) because of defendant's inability to communicate effectively, the trial court's findings state that defendant was able to assist in his defense are not supported by the evidence; and (3) the trial court's findings, therefore, fail to support its conclusion following both hearings that defendant had the capacity to proceed to trial. Contrary to defendant's contention, however, the trial court's findings and the evidence presented at both hearings address defendant's manner of communication vis-a-vis his ability to assist in his defense.
Defendant's mannerisms and unusual speech patterns were noted and addressed by those who evaluated defendant as well as the trial judges from the 11 September and 24 October 2006 hearings. Owen and Dr. Bartholomew testified and the trial court found in its written order that defendant's speech pattern was an intentional attempt to appear more intelligent. Both trial judges also determined that, notwithstanding defendant's peculiar speech, they were able to understand him if they were patient and insisted that defendant clarify his statements. Even Clement, the only witness to testify that defendant lacked the capacity to proceed, acknowledged that "with considerable patience, one can perhaps understand the crux of [defendant's] conversation."
Although defendant's speech may have been at times bizarre or difficult to follow, the trial court must look at all the surrounding circumstances, then make a determination of defendant's competency to stand trial. See Heptinstall, 309 N.C. at 237, 306 S.E.2d at 112. The evidence supports the trial court's determination that defendant was able to assist in his own defense, and defendant has failed to show that the court abused its discretion in concluding that he failed to meet his burden of proving incapacity. Accordingly, defendant's assignments of error with respect to his capacity to proceed are overruled.
Defendant next contends that the trial court erred in denying his motion to dismiss the charge of kidnapping White on the grounds that the State failed to present evidence showing that White was confined, restrained, or removed beyond what was required to accomplish the robbery with a dangerous weapon.[1] We disagree. It is well-established that
[w]hen ruling on a motion to dismiss, the trial court must determine whether the prosecution has presented substantial evidence of each essential element of the crime. Substantial evidence is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The trial court must [then] view the evidence in the light most favorable to the [S]tate, giving the [S]tate the benefit of every reasonable inference that might be drawn therefrom.
State v. Coltrane, ___ N.C. App. ___, ___, 656 S.E.2d 322, 327 (2008) (first alteration added) (internal quotation marks and citations omitted).
Pursuant to North Carolina General Statutes, section 14-39, in relevant part:
(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
. . . .
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]
. . . .
(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.
N.C. Gen. Stat. § 14-39 (2005).
As our Supreme Court has explained, "more than one criminal offense may arise out of the same criminal course of action," State v. Boyce, 361 N.C. 670, 672-73, 651 S.E.2d 879, 881 (2007). "It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim." State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Therefore, "the restraint, which constitutes the kidnapping, [must be] a separate, complete act, independent of and apart from the other felony."Id. at 524, 243 S.E.2d at 352. Additionally, "[c]ases since Fulcher have held that the key question is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that inherent in the underlying felony itself."State v. Muhammad, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001);see, e.g., State v. Beatty, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998); State v. Pigott, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) . Therefore, "[e]vidence that a defendant increased the victim's helplessness and vulnerability beyond what was necessary to enable the robbery . . . is sufficient to support a kidnapping charge. " Muhammad, 146 N.C. App. at 295, 552 S.E.2d at 237. In the case sub judice, defendant entered White's residence and bedroom and tied him up tightly with electrical cords for the purpose of facilitating the robbery with a dangerous weapon. Although defendant cites State v. Featherson, 145 N.C. App. 134, 548 S.E.2d 828 (2001), in support of his argument, Featherson is distinguishable. In Featherson, the defendant, an employee of the restaurant that was robbed, assisted the robbers in gaining access to the restaurant and was bound loosely to the victim with duct tape so as to the give the false appearance that she was not involved in the robbery. See Featherson, 145 N.C. App. at 139, 548 S.E.2d at 832. This Court found that the victim "was already in the same room as the robbers when she was bound to defendant," and that she "was exposed to no `greater danger than that inherent in the armed robbery itself.'"Id. at 140, 548 S.E.2d at 832 (quoting State v. Irwin, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)). In the instant case, after White awoke and found himself bound by electrical cord, he observed Moore pointing a rifle at him and defendant brandishing a knife. Binding White with electrical cord was not an inherent part of the robbery and was not necessary to complete the robbery; instead, White's restraint facilitated the subsequent robbery and exposed him to "greater danger than that inherent in the armed robbery itself." Irwin, 304 N.C. at 103, 292 S.E.2d at 446. In fact, White remained tied up until he was freed by Rowell, after the robbery was completed. Accordingly, defendant's assignment of error is overruled. Finally, defendant contends that the trial court erred in denying his motion to dismiss the charge of kidnapping Rowell on the grounds that the State failed to present evidence showing that Rowell was confined, restrained, or removed beyond what was required to accomplish the attempted rape and sexual offenses.[2] We disagree.
Similar to defendant's convictions for both kidnapping and robbing White, the restraint that constituted defendant's kidnapping of Rowell must have been separate and apart from the attempted rape. See Fulcher, 294 N.C. at 524, 243 S.E.2d at 352; see also State v. Simpson, ___ N.C. App. ___, ___, 653 S.E.2d 249, 253.54 (2007) (kidnapping and attempted rape). We have held:
Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape. Such asportation is separate and independent of the rape, is removal for the purpose of facilitating the felony of rape, and is, therefore, kidnapping pursuant to N.C.G.S. § 14-39.
State v. Walker, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987) (citations omitted). Therefore, "[e]vidence tending to show the rape victim was forced down a hallway from one room to another was a sufficient asportation separate and independent of the elementsof rape to support a conviction for second-degree kidnapping." State v. Blizzard, 169 N.C. App. 285, 290, 610 S.E.2d 245, 250 (2005).
In the instant case, defendant, who was armed with a knife, could have perpetrated the assault when he discovered Rowell asleep on the couch in the living room. Instead, defendant forced Rowell down the hallway, first to Monk's room, and then, after observing Monk asleep in that room, to an unoccupied guest room. Therefore, the evidence demonstrates that defendant took Rowell "to a more secluded area to prevent others from witnessing or hindering the [attempted] rape" and sexual offenses. Walker, 84 N.C. App. at 543, 353 S.E.2d at 247. Accordingly, defendant's assignment of error is overruled.
Defendant's remaining assignments of error not argued in his brief are deemed abandoned. See N.C.R. App. P. 28(b)(6) (2007).
No Error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] The State contends that Fulcher was decided on constitutional grounds and that by failing to raise a constitutional argument in his motion to dismiss, defendant failed to preserve this issue for appellate review. Contrary to the State's contention, however, our "[Supreme] Court did not decide Fulcher solely on constitutional grounds" but also based upon both legislative intent and statutory construction. State v. Beatty, 347 N.C. 555, 558, 495 S.E.2d 367, 369 (1998) (emphasis in original). Additionally, defendant properly preserved this issue for appellate review by arguing in his motion to dismiss "that either the weapon is used to facilitate the second-degree kidnapping charge against Mr. White or it's used as an element of robbery with a dangerous weapon, but I don't think that it can support both of those." See N.C.R. App. P. 10(b)(1) (2007).
[2] Contrary to the State's contention, defendant properly preserved this issue for appellate review, by arguing in his motion to dismiss that "the defendant cannot be punished for first-degree kidnapping based upon the sex offense and also be punished for the sex offense." See N.C.R. App. P. 10(b)(1) (2007).