STROUD, Judge.
Defendant appeals judgments convicting him of robbery with a dangerous weapon, second degree kidnapping, misdemeanor larceny, two counts of discharging a weapon into occupied property, and possession of a firearm by a felon. For the following reasons, we find no error.
I. Background
The State's evidence tended to show that in October of 2010, defendant was in a gang and suggested that he and three fellow gang members rob the home of Juan Jabana who was known to have gambling often occurring at his house. Two of the gang members stole a car, and then they went to Mr. Jabana's home. Thereafter, Mr. Jabana was playing cards with a group of people in his home when the door to his garage suddenly opened and four masked men wearing gloves and carrying guns entered. Defendant was holding an AK-47 and told the group "to give the money up." One man moved toward the gang, and defendant shot toward the man. The bullet left a hole in Mr. Jabana's garage, passed into his neighbor's home, and eventually hit a mattress where individuals were sleeping in the neighboring home. Defendant and the gang took money from the group, and then defendant drove the gang away in the stolen car. The gang then burned the masks and clothes they were wearing at the time of the robbery.
On or about 4 April 2011, defendant was indicted for second degree kidnapping ("kidnapping"), larceny of a motor vehicle, robbery with a dangerous weapon ("robbery"), two counts of discharging a weapon into occupied property, and possession of a firearm by a felon. A jury found defendant guilty of all of the charges against him; defendant was sentenced accordingly and appeals.
II. Vouching for Credibility of a Witness
Defendant first contends that "[t]he prosecutor's questions to [the State's key witness,] Fat Boy[,][1] amounted to improper personal vouching for the credibility of" Fat Boy. Fat Boy was a gang member of defendant's at the time the crimes at issue were committed who originally gave a statement regarding the details of the planning and commission of the crimes and then altered some details of that statement during his testimony. During the State's examination of Fat Boy, the following dialogue took place:
Q Did you decide on your own to clarify and tell the whole truth as to what happened?
[Defendant's Attorney]: Objection, Your Honor.
THE COURT: I'll overrule that, and let him answer that question.
THE WITNESS: Yes.
Then upon redirect examination:
Q So when she says that you're not telling the truth, you actually are telling what happened, but you're telling the full story now; is that right?
[Defendant's Attorney]: Objection, Your Honor, to the leading.
THE COURT: I'll overrule. Let him answer.
BY [THE STATE]:
Q Is that correct?
A Yes.
Defendant contends that
[t]he prosecutor's ... [first question] implied the prosecutor's personal belief that Fat Boy's testimony was entirely truthful, and that the only real question [was] whether Fat Boy decided to 'tell the whole truth' on his own or with encouragement from a third party.... The prosecutor's ... [second question] to Fat Boy ... implies a personal belief that Fat Boy's testimony was not only the truth but the whole truth.
We review the issue of admission of evidence over an objection for abuse of discretion. State v. James, 224 N.C.App. 164, 166, 735 S.E.2d 627, 629 (2012) ("The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence.... Even if the admission of evidence was error, in order to reverse the trial court, the appellant must establish the error was prejudicial. If the other evidence presented was sufficient to convict the defendant, then no prejudicial error occurred." (citations, quotation marks, and brackets omitted)).
A prosecutor may not personally vouch for the credibility of a witness, either through argument or questioning, but may present reasons the jury should believe a witness. State v. Jordan, 186 N.C.App. 576, 586, 651 S.E.2d 917, 923 (2007) ("Our Supreme Court has recognized that while counsel may not personally vouch for the credibility of the State's witnesses or for his own credibility, counsel may give the jurors reasons why they should believe the State's evidence."), disc. review denied, 362 N.C. 241, 660 S.E .2d 492 (2008). Here, the State's questions are not expressing the prosecutor's personal belief in the witness's credibility but rather properly clarifying the reasons for any differences between the witness's prior statement and his trial testimony as part of explaining to the jury why they should believe the testimony at trial. See generally State v. Wiley, 355 N.C. 592, 620, 565 S.E .2d 22, 42 (2002) ("[C]ounsel possesses wide latitude to argue facts in evidence and all reasonable inferences arising from those facts."), cert. denied, 537 U.S. 1117, 154 L.Ed.2d 795 (2003). The State's questions were appropriate, and the trial court did not abuse its discretion in allowing the line of questioning before the jury. See James, 224 N.C.App. at 166, 735 S.E.2d at 629. This argument is overruled.
III. Improper Opinion
Defendant next contends that "Detective Garcia improperly opined on ... [his] guilt." Detective Garcia testified:
Q Did you in your investigation-did you question Mr. Alarcon?
A He was arrested, and he was in Charlotte. Now I do believe that one day when I was working off duty, and I was working at the Curious Cat doing security for it, Alarcon came up to me and he said why did I charge him with charges of robbery.
And at that point I was doing security. I did not have time to speak to him there. But I did invite him to come to my office so that we can speak about his charges of robbery case. And I did tell him that I knew he did it.
(Emphasis added.)
In State v. Godbey, we stated,
In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error. However:
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
- -- N.C.App. ----, ----, 772 S.E.2d 123, 125 (2015) (citations, quotation marks, and brackets omitted).
Here, defendant directs us to two cases where the trial court found error in an officer's testimony: In State v. Turnage, an officer testified that the tools he found on the defendant indicated that "he was just probably in the process of breaking into a residence[,]" 190 N.C.App. 123, 129, 660 S.E.2d 129, 133-34, rev'd on other grounds, 362 N.C. 491, 666 S.E.2d 753 (2008) and in State v. Carrillo an officer testified regarding a package of cocaine, "I think your client knew what was in that package." 164 N.C.App. 204, 209-10, 595 S.E.2d 219, 223 (2004), appeal dismissed and disc. review denied, 359 N.C. 283, 610 S.E.2d 710 (2005). However, both Turnage and Carrillo are inapposite to this case as Detective Garcia did not opine that defendant was guilty, but rather testified as to what he had said to defendant. Contrast Turnage, 190 N.C.App. 123, 129, 660 S.E.2d 129, 133-34 ; Carrillo, 164 N.C.App. 204, 209-10, 595 S.E.2d 219, 223. However, even assuming arguendo that Detective Garcia's statement at issue was impermissible opinion testimony, in light of the extensive other evidence against defendant, particularly Fat Boy's testimony regarding defendant's planning and commission of the crimes, we do not believe Detective Garcia's opinion "had a probable impact on the jury's finding that the defendant was guilty." Godbey, --- N.C.App. at----, ---S.E.2d at, ----. This argument is overruled.[2]
IV. Motion to Dismiss
Lastly, defendant, relying on State v. Featherson, 145 N.C.App. 134, 548 S.E.2d 828 (2001), contends that "there was insufficient evidence to support ... [his] second-degree kidnapping conviction because there was no evidence that the restraint of the complaining witness went beyond that which was inherent in the robbery." (Original in all caps.) Defendant made a general motion to dismiss, which the trial court denied.
A. Standard of Review
This Court reviews the trial court's denial of a motion to dismiss de novo. Upon defendant's motion to dismiss, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor.
State v. Larkin, --- N.C.App. ----, ----, 764 S.E.2d 681, 689-90 (2014) (citations and quotation marks omitted), disc. review denied, - -- N.C.App. ----, 768 S.E.2d 841 (2015).
B. Kidnapping Statute
North Carolina General Statute 14-39 provides:
(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
....(2)
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]
....
(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.
N.C. Gen.Stat. § 14-39 (2009).
C. Law on Restraint
Our Supreme Court has stated,
Any person who unlawfully confines, restrains, or removes from one place to another any other person sixteen years of age or older without the latter's consent is guilty of kidnapping if the confinement, restraint, or removal is done for the purpose of facilitating the commission of any felony. Restraint connotes a restraint separate and apart from that inherent in the commission of the other felony. If the restraint is an inherent, inevitable element of a joined armed robbery, then no separately punishable offense of kidnapping can exist. The key question is whether the victim is exposed to greater danger than that inherent in the armed robbery itself or subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.
State v. Johnson, 337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994) (emphasis added) (citations and quotation marks omitted).
In Featherson, the case defendant relies upon, the defendant, an employee of a restaurant, rang a bell on a back door of the restaurant she knew she was not supposed to use so that an employee inside would open the door, then
Lester and McDonald[, defendant's boyfriend and friend,] entered the restaurant through the back door after pushing defendant inside. Employee Huggins was already in the room when defendant was pushed inside. McDonald told defendant, Pittman, and Huggins that they were being robbed. Lester ordered Huggins to come to him. Huggins and defendant were forced to the floor, while Lester taped them together in such a manner as to allow them to escape quickly. As Lester taped Huggins and defendant, McDonald forced Pittman to open the office safe. When Pittman opened the safe, McDonald grabbed the deposit bags and he and McDonald ran out of the back door leaving Pittman in the office. When the two men left, Pittman discovered that defendant and Huggins had already freed themselves. Huggins then called the police.
145 N.C.App. 134, 135-38, 548 S.E.2d 828, 829-32 (2001).
This Court determined,
Based on these facts, the restraint and movement of Huggins was an inherent and integral part of the armed robbery. This restraint and movement was not sufficient to sustain a conviction for second degree kidnapping. Huggins was already in the same room as the robbers when she was bound to defendant. Huggins was exposed to no greater danger than that inherent in the armed robbery itself, nor was she subjected to the kind of danger and abuse the kidnapping statute was designed to prevent. Thus, we find error in defendant's conviction for second degree kidnapping of Huggins.
Id. at 138-39, 548 S.E.2d at 832 (citations, quotation marks, and brackets omitted).
We note that in Featherson, whether the employees were restrained was not at issue as certainly they were; however, the restraint was determined to be an "inherent" part of the robbery. Id., 145 N.C.App. at 138-39, 548 S.E.2d at 832. The reason this Court provided for why the restraint was "inherent" in the robbery was because no one was "exposed to ... greater danger" or "to the kind of danger and abuse the kidnapping statute was designed to prevent." Id.
In another case, State v. Ripley, this Court wrote an extensive analysis determining that the threat of a firearm would not be sufficient to show "greater danger" for purposes of finding restraint as a separate element of kidnapping:
The Supreme Court's holding in Beatty addresses the State's argument in the case sub judice that restraint of a victim by threatened use of a firearm during an armed robbery of another party necessarily increases the danger to that victim. Beatty rejected this possibility, and therefore controls on this issue. We refuse the State's invitation to allow a separate kidnapping charge to arise out of any armed robbery in which the perpetrator does more than simply display a weapon, such as instructing the victim not to move while he undertakes to rob other victims. No matter how reprehensible we find the actions of defendant and his agents, we cannot hold that the restraint exposed the victim to a greater danger than that inherent in the armed robbery itself.
....
... [T]he threatened use of a firearm upon these two victims did not expose them to any danger greater than that inherent in the robberies for which defendant has been convicted. Accordingly, defendant's convictions of second degree kidnapping with respect to Mr. Lucas and Mr. Perez must be reversed....
....
... Rather, the only harm Ms. Basden was exposed to was the harm inherent in the armed robbery, the threatened use of a firearm. Accordingly, we hold that Ms. Basden's removal was a mere technical asportation inherent in the armed robbery.
172 N.C.App. 453, 458-60, 617 S.E.2d 106, 109-11 (2005) (citation and quotation marks omitted), aff'd, 360 N.C. 333, 626 S.E.2d 289 (2006).
D. State's Argument
The State's argument regarding the issue of restraint and greater danger focuses on the fact that defendant used an AK-47 and characterizes the threat based mainly upon the type of firearm instead of its actual use by defendant, without citation of any authority that the type of weapon alone could provide the additional exposure to danger necessary to support the kidnapping charge. Essentially, the State argues that "a military style 'automatic' assault rifle" is inherently more dangerous than some other types of firearms. Although this might be true, such a claim is not supported by the evidence presented in this case or by any legal authority in the State's argument. We need not speculate about the gradations of dangerousness of various sorts of weapons, but we must consider only whether there was "substantial evidence" of a restraint that was not an "inherent, inevitable element of" the robbery before the trial court. Johnson, 337 N.C. at 221, 446 S .E.2d at 98 ; Larkin, --- N.C.App. at ----, 764 S.E.2d at 689. Again, "[t]he key question" in determining if restraint was an "inherent, inevitable" part of the robbery is determining "whether the victim is exposed to greater danger" or "to the kind of danger and abuse the kidnapping statute was designed to prevent." Johnson, 337 N.C. at 221, 446 S.E.2d at 98.
E. Greater Danger Analysis
While we acknowledge that this is a close case on the facts supporting the element of restraint "separate and apart from that inherent in the commission [,]" id., of the robbery, we are mindful that we must view "every reasonable inference" in favor of the State, and viewing the evidence in this light we conclude that there was substantial evidence of the element of restraint that was not an inherent part of the robbery. Larkin, --- N.C.App. at ----, 764 S.E.2d at 689-90. According to Fat Boy's testimony, the gang entered defendant's garage with the firearm and a drunk man moved toward them; defendant then shot his gun in the direction of the drunk person "to make sure the [drunk man] didn't do anything[;]" the drunk man then "dropped to his knees." Mr. Jabana testified that someone said, "[n]obody moves[,]" and that he didn't move because he was "scared, and because they had already shot a shot."
Thus, viewed "in the light most favorable to the State," id., the facts demonstrate defendant did not enter into Mr. Jabana's garage initially firing the weapon to intimidate the group, but rather fired a shot only after someone moved, apparently in an attempt to keep the man from moving and warning others not to move. Defendant did not merely "threaten[ ]" use of a firearm to restrain the group, but he actually used the firearm, contrast Ripley at 458-60, 617 S.E.2d at 109-11, and not only as a show of power upon entry into the garage, but in response to a person moving in the garage. Most notably, in considering "[t]he key question[,]" firing a gun in the direction of the people in the garage certainly "exposed [Mr. Jabana] to greater danger than that inherent in the armed robbery itself[.]" Johnson, 337 N.C. at 221, 446 S.E.2d at 98. A gun that is merely displayed is dangerous but not so dangerous as one that is actually being fired towards people to prevent them from moving, and thus the trial court did not err in denying defendant's motion to dismiss, see Larkin, --- N.C.App. at ----, 764 S.E.2d at 689-90, and this argument is overruled.
V. Conclusion
For the foregoing reasons, we find no error.
NO ERROR.
Judges DILLON and DAVIS, concur.
Report per Rule 30(e).

"Fat Boy" was the witness's street name and is the name used in defendant's brief.

Defendant also suggests that we consider this issue and the previous one cumulatively, but plain error review requires that each issue be considered individually. See State v. Dean, 196 N.C.App. 180, 194, 674 S.E.2d 453, 463 ("[T]he plain error rule may not be applied on a cumulative basis, but rather a defendant must show that each individual error rises to the level of plain error."), appeal dismissed and discretionary review denied, 363 N.C. 376, 679 S.E.2d 139 (2009).